HARTFORD FEDERAL SAVINGS AND LOAN ASSOCIATION
*v.* ROSA LEE GREEN

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 646

Argued November 14, 1978—decided May 18, 1979

*John C. Wirzbicki,* for the appellant (defendant).

*Kenneth S. Halpern,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J.  The plaintiff Hartford Federal Savings and Loan Association (hereinafter Hartford Federal) brought this action to recover moneys owed it under the terms of a promissory note executed by the defendant Rosa Lee Green.  The complaint alleged, inter alia, that Green had failed to make a payment due on October 24, 1974 and that Hartford Federal was exercising its option to declare the note immediately due and payable.  It also alleged compliance with certain requirements of General Statutes § 42-136.  Green's answer essentially denied all of the allegations of the complaint and set up three special defenses.  Green also pleaded two setoffs and two counterclaims based upon the plaintiff's alleged violations

of the Home Solicitation Sales Act (hereinafter HSSA), General Statutes §§ 42-134 through 42-143 and the Connecticut Truth-in-Lending Act §§ 36-393 through 36-417.

The trial court rendered judgment for Hartford Federal on the complaint for $2319.85 plus an attorney's fee of $350 and costs. It also rendered judgment for Hartford Federal on both setoffs and on both counterclaims. The defendant Green has appealed from the decision rendering judgment for the plaintiff on the complaint.

The finding discloses the following relevant facts: The note that is the subject of this action was entered into incident to a home solicitation sale of materials and services for the installation of aluminum siding. On or about June 17, 1971, a representative of A & C Contractors (hereinafter A & C) appeared, unsolicited, at Green's home. As a result of this meeting, Green and A & C entered into an agreement whereby Green agreed to pay A & C $2700 for which A & C would provide and install aluminum siding on premises owned by Green. Green also signed a promissory note in the amount of $4211.52, which was to have been repaid in ninety-six successive monthly installments of $43.87 and a final installment of any balance due. At the time Green signed the note it was not dated. On August 20, 1971, after the work was completed, Green signed a completion certificate. After signing that certificate, the note was dated August 24, 1971 and the dates for repayment were inserted. Green made forty-one payments on the note. Hartford Federal holds the note, which is now due and payable.

The defendant claims that the court erred (1) in concluding that Hartford Federal had complied with the provisions of the HSSA; (2) in concluding

that Hartford Federal was not subject to the provisions of the Connecticut Truth-in-Lending Act and that Hartford Federal complied with the provisions of the federal Truth in Lending Act; (3) in finding as a fact something that states a conclusion; and (4) in refusing to find certain facts claimed to have been admitted, undisputed or indisputable.

## I

The defendant claims that the plaintiff violated both § 42-136 (a) and § 42-136 (b) of the HSSA. In pertinent part, General Statutes § 42-136 (a) provides: "Any note . . . given by a buyer in respect of a home solicitation sale shall be dated not earlier than the date of the agreement or offer to purchase." The defendant correctly states that the sales agreement was entered into on June 17, 1971 and that the note was dated August 24, 1971. The claimed violation of § 42-136 (a), which proscribes a backdating of the note, is without merit. The statutory requirement was clearly met.

We turn now to the claimed violation of General Statutes § 42-136 (b). This section provides that "[e]ach note . . . given by a buyer in respect of a home solicitation sale shall bear on its face a conspicuous statement as follows: THIS INSTRUMENT IS BASED UPON A HOME SOLICITATION SALE, WHICH SALE IS SUBJECT TO THE PROVISIONS OF THE HOME SOLICITATION SALES ACT. THIS INSTRUMENT IS NOT NEGOTIABLE." The defendant claims that the transaction here is a sale subject to the Uniform Commercial Code; title 42a of the General Statutes; and that the code's definition of "conspicuous" was not here satisfied. See General Statutes § 42a-1-201 (10). This claim is also without merit. Section 42a-1-201, which contains general

definitions including that of "conspicuous" in subsection 10, indicates, in the introductory phrase, that the definitions that follow are limited in application to title 42a. The HSSA appears in title 42 of the General Statutes, quite apart from the title in which the Uniform Commercial Code appears. While the code, and particularly cases construing "conspicuous" as that term is defined under the code, may be interpretively helpful, the language of § 42-136 (b) is not subject to the Uniform Commercial Code.

The defendant claims that the note does not bear on its face a conspicuous statement as the statute requires. We do not agree. The statutory language appears on the face of the note. It is printed just above the line on which the defendant placed her signature. There are spaces above and below this language that tend to set it out in an attention-getting location. Certainly the location of the required language just above the signature line on which the defendant actually signed the document and the spaces above and below it that set it off serve to sustain the conclusion that it is conspicuous.

We recognize that while the required language is on the face of the document as the statute requires, it is not printed in the largest type employed in the note. There is, however, no statutory direction that it be so. An examination of §§ 42-135a (1) and 42-135a (2) of the HSSA discloses that certain language must appear in a home solicitation sale agreement before it becomes effective. In both cases the legislature spelled out with precision what it intended. Section 42-135a (1) requires the specified statement to be "in bold face type of a minimum size of ten points" and located in "immediate proximity to the space reserved in

the contract for the signature of the buyer."[1]  Section 42-136 does not require any specific size or boldness of type, although in the two subsections of the section immediately preceding it, the legislature took care to do so.  See General Statutes § 42-135a (1) and (2).  Having done that twice, it would have been just as simple for it to have done so again in § 42-136, had it so intended.  This difference in treatment evidences an affirmative selectivity by the legislature.  Thus, it is apparent that the legislature chose here not to establish any precise formula that would render a statement conspicuous.  We must construe the statute to give effect to the legislative intent.  *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73.  That intent is to be found not in what the legislature meant to say, but in the meaning of what it did say.  *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452.  The passage of the HSSA in 1967 and its later liberalizing amendments have been said to be "evidence of legislative concern for the protection of consumers from high-pressure sales tactics."  *Associated Credit Co.* v. *Nogic,* 6 Conn. Cir. Ct. 745, 748.  We do not believe that our interpretation of the word "conspicuous" thwarts that purpose.  See *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31.

## II

We turn now to the claims that the court erred in concluding that Hartford Federal was subject to the federal and not the Connecticut Truth-in-Lending Act and that it complied with the federal act.  The plaintiff is a federally chartered banking institution.  Because Connecticut has adopted a truth-in-lending

---

[1] The "immediate proximity" language in § 42-135a (1) reenforces our conclusion that the location of the language in the sale agreement here, just above the "space reserved in the contract for the signature of the buyer," is significant in determining whether the statement is conspicuous.

act substantially similar to the federal act; see 15 U.S.C. §§ 1601 through 1666j and General Statutes §§ 36-393 through 36-417; the board of governors of the federal reserve system has exempted credit transactions within the state of Connecticut from the requirements of the federal Truth in Lending Act. 35 Fed. Register 11992 (1970); see also 15 U.S.C. § 1633. This exemption, however, expressly excludes "[t]ransactions in which a federally-chartered institution is a creditor." 35 Fed. Register 11992 § 1 (e) (1) (1970). Thus, the plaintiff is subject to the federal Truth in Lending Act, and the court did not err in so concluding.[2]

The defendant claims that because the plaintiff failed to insert the number, amount and due dates of payments scheduled to repay the indebtedness before the note was executed by the defendant, the disclosure provisions of 15 U.S.C. § 1639 (a) (6) had not been satisfied. This claim is premised on the requirement in 15 U.S.C. § 1639 (b) that the above disclosures be made "before the credit is extended" and the language of 12 C.F.R. § 226.8 (a), which requires that they be made "before the transaction is consummated." The defendant argues that the transaction was consummated when she signed the note on June 17, 1971, and that on that date the above disclosures had not been made.

Section 226.2 (kk) of the Code of Federal Regulations defines with greater precision the time at which the truth in lending disclosures must be made: "A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer or a lessor and lessee irrespective of the time of performance

---

[2] Because of the similarity of the two truth-in-lending acts, we address the defendant's claim of noncompliance even though it was based on the state act.

of either party." A promissory note is, in its essential form, a contract, and basic principles of contract law apply to its making and interpretation. 11 Am. Jur. 2d, Bills and Notes § 1. A contract is created or consummated when the law attaches rights or liabilities to the making of one or a set of promises. 1 Williston, Contracts (3d Ed. Jaeger) § 1; see 1 Corbin, Contracts § 3. To resolve the defendant's claim, we must determine at what point a contractual relationship arose between Hartford Federal and Green. See *Waters* v. *Weyerhaeuser Mortgage Co.*, 582 F.2d 503, 504–506 (9th Cir.); *Bissette* v. *Colonial Mortgage Corporation of D.C.*, 477 F.2d 1245, 1246, 1248 (D.C. Cir.); *Wachtel* v. *West*, 476 F.2d 1062, 1065 (6th Cir.), cert. denied, 414 U.S. 874. Where something remains to be done or must occur before judicial enforcement of a particular promise is possible, the act or event is said to be a condition precedent to the formation of a valid contract. 3A Corbin, Contracts § 628; *New Haven Tile & Floor Covering Co.* v. *Roman*, 137 Conn. 462, 464. "A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence." *Lach* v. *Cahill*, 138 Conn. 418, 421. Conditions, whether implied or express, derive from the intention of the parties, unless they are imposed by law as constructive conditions. See 3A Corbin, Contracts §§ 631, 635; *Lach* v. *Cahill*, supra. We must, therefore, determine whether the record before us discloses any condition precedent to the formation of a valid contract.

It is undisputed by the parties that Hartford Federal would not extend credit to the defendant until she signed a completion certificate containing an approval of the work performed and an agree-

ment to waive any claim against Hartford Federal arising out of the contract for the installation of aluminum siding. This event was a condition precedent to the formation of a valid contract. Hence, although the note was executed on June 17, 1971, a binding contract between Hartford Federal and Green did not exist until the condition was satisfied. Upon the happening of that condition, credit was extended, the transaction was consummated and the pertinent disclosures were made. We note that the essential terms of the loan were fully disclosed at the time the note was executed and, hence, the defendant's ability to shop for credit was unhampered. See 15 U.S.C. § 1601. Under the circumstances of this case, we conclude that neither the letter nor the spirit of the federal Truth in Lending Act was violated.

## III

The defendant also assigns error to paragraph nine of the finding, in which the court found essentially that the language required by General Statutes § 42-136 was recited in the note and that the "conspicuousness" requirement of the statute was satisfied. The defendant claims that the court "stated as fact what is actually a conclusion." We must overrule this assignment of error. Insofar as this paragraph recites that "the requirement of § 42-136 as to conspicuousness is met," it is a conclusion, although not so denominated. The balance of that paragraph is a finding of fact. See Maltbie, Conn. App. Proc. § 165; *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121. Conclusions are tested by the finding and must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Hames* v. *Hames,* 163 Conn. 588, 592. The finding should be

construed as a whole and given a reasonable construction. *Rosenberg* v. *Planning Board,* 155 Conn. 636, 642; Maltbie, Conn. App. Proc. § 135.

The final claim which we discuss is that the court erred in refusing to include six paragraphs of the draft finding in its finding which were "either admitted, undisputed or indisputable." The court was correct in declining to include the particular paragraphs of the draft finding because doing so would not affect the result. See *Lewis* v. *Lewis,* 162 Conn. 476, 481. Certain additions sought are implicit in the finding as made and, therefore, need not be added. *Broderick* v. *Shea,* 143 Conn. 590, 591.

There is no error.

In this opinion PARSKEY and A. ARMENTANO, Js., concurred.